COURT OF APPEALS
DECISION
DATED AND FILED

September 6, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP730**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021TP41

**IN COURT OF APPEALS
DISTRICT III**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO P. K.,
A PERSON UNDER THE AGE OF 18:

BROWN COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A. K.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

¶1    STARK, P.J.[1]  Alice[2] appeals from an order terminating her parental rights (TPR) to her daughter, Paige.  Alice argues that the circuit court erroneously exercised its discretion by finding that it was in Paige's best interest to order the TPR because the court did not receive any direct evidence from Paige's proposed adoptive resources.  We reject Alice's argument and affirm.

## BACKGROUND

¶2    Paige was born in April 2018, and she is the biological child of Alice and Stewart.[3]  Paige was removed from her parents' care in May 2018, and was ultimately adjudicated a child in need of protection or services (CHIPS).  Paige was initially placed in a receiving foster home and she was subsequently placed in her current foster home in June 2018.

¶3    Alice was unable to comply with the court-ordered CHIPS conditions for reunification with Paige, and on July 16, 2021, the Brown County Department of Health and Human Services (the Department) petitioned the circuit

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  For ease of reading and to protect confidentiality, we refer to the appellant in this confidential manner using a pseudonym, rather than her initials, and we do the same for any of Alice's family members referenced in this opinion.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."  RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

[3]  Stewart voluntarily terminated his parental rights to Paige.  Stewart's TPR is not at issue in this appeal.

2

court to terminate Alice's parental rights to Paige on the ground that Paige was a child in continuing need of protection or services pursuant to WIS. STAT. § 48.415(2)(a). After a trial, a jury found that there were grounds to terminate Alice's parental rights to Paige. The court accepted the jury's verdict and found Alice to be an unfit parent. The case then proceeded to a contested dispositional hearing.

¶4 At the dispositional hearing, the Department presented one witness, Brittany Schmidt, an employee of the Department and Paige's case manager. As relevant here, Schmidt testified that: (1) she contacted Lutheran Social Services (LSS), and LSS sent her a report stating Paige was an adoptable child; (2) Paige's foster family was interested in adopting Paige, and they have never wavered in their desire to do so; (3) the foster family had already begun taking steps toward adopting Paige; (4) LSS had conducted a home study of the foster family and identified no safety concerns in the home; (5) Paige had no health or developmental concerns, and her medical needs were being met; (6) Paige did not have a substantial relationship with either parent or either parent's family members; (7) Paige was placed with her foster family for approximately four years; (8) Paige's foster parents were previously approved as an adoptive resource for children, but if they did not adopt Paige, there was a pool of adoptive families available to adopt her; and (9) terminating Alice's parental rights would allow Paige to have permanency and stability in her foster home. Schmidt ended her direct testimony by stating that she believes terminating Alice's parental rights was in Paige's best interest.

¶5 Paige's guardian ad litem (GAL) also recommended terminating Alice's parental rights. Paige's foster parents were present but they were not called to testify. Alice was present but declined to testify.

¶6      Relying on Schmidt's testimony and the GAL's recommendation, the circuit court found that it was in Paige's best interest to terminate Alice's parental rights. Specifically, the court found that Paige was an adoptable child and that if the foster parents, who were an adoptive resource, did not adopt Paige, there were other adoptive resources available. The court noted that Paige was healthy, there were no concerns with her development, she was four and one-half years old, and she had been removed from Alice's care since before she was two months old.

¶7      The circuit court further found that Paige did not have a substantial relationship with her parents or her parents' family members. It noted that despite weekly visitation with Alice, Paige's true separation from her parents essentially occurred at the time she was removed from their care, and it would not be harmful to Paige to sever those relationships. The court also found that although Paige is too young to understand a TPR or state her wishes, the type of relationship she has with her foster parents is telling, and it is clear that Paige "wishes [her relationship with her foster family] to continue based on the way she interacts with" them.

¶8      Finally, the circuit court found that terminating Alice's parental rights, along with facilitating Paige's adoption, will allow Paige to have the stability and permanency that Paige deserves. Absent the TPR, the court stated that it could not find guardianship in Paige's best interest given the length of time that she has been out of the parental home and the lack of permanency that a guardianship would afford. Accordingly, the court found that reasonable efforts to achieve the goals of the permanency plan had been made, and it ordered the termination of Alice's parental rights. Alice now appeals.

**DISCUSSION**

¶9      On appeal, Alice argues that the circuit court erroneously exercised its discretion by finding that terminating her parental rights was in Paige's best interest because the court did not receive any direct evidence from Paige's foster family and proposed adoptive resources. For the reasons discussed below, we conclude that the Department presented sufficient evidence for the court to find that the termination of Alice's rights was in Paige's best interest.

¶10     We will sustain the circuit court's ultimate determination in a TPR proceeding if the court properly exercised its discretion. *State v. Margaret H.*, 2000 WI 42, ¶32, 234 Wis. 2d 606, 610 N.W.2d 475. A court "properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). A court's findings of fact will be upheld unless they are clearly erroneous. WIS. STAT. § 805.17(2).

¶11     A contested proceeding for the termination of parental rights involves a two-step procedure. *Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. The first step is a fact-finding hearing in which a jury or circuit court determines "whether any grounds for the termination of parental rights have been proven." *Id.*, ¶26; WIS. STAT. § 48.424(3). If grounds are found for termination, the court must find the parent unfit. *Julie A.B.*, 255 Wis. 2d 170, ¶26.

¶12     The termination proceedings then move to the second step, a dispositional hearing, at which the circuit court must consider the best interest of

the child. WIS. STAT. § 48.426(2). To determine the best interest of the child, the court must consider, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

¶13 We first note that Alice did not object to the sufficiency of the evidence at the dispositional hearing, and she raises her argument regarding the need for direct testimony from Paige's adoptive resources for the first time on appeal. Thus, her claim is arguably forfeited. *See Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited."). The Department, however, does not argue forfeiture, and we therefore choose to decide this matter on the merits.

¶14 We conclude that the circuit court's factual findings based upon Schmidt's testimony are not clearly erroneous, and Alice does not argue otherwise. In addition, Alice concedes that the court applied the facts to the proper standard of law and considered all of the statutorily enumerated factors in

determining Paige's best interest. *See* WIS. STAT. § 48.426(3). Alice nevertheless contends that the court heard no personal, first-hand account of any potential adoptive resource's desire or commitment to adopt Paige. Without that evidence, she argues that the court could not fully consider the required statutory factors by relying solely on Schmidt's testimony. In particular, Alice argues that the court could not have meaningfully considered two of the statutory factors—the likelihood of Paige's adoption and whether the termination of Alice's parental rights would allow Paige to enter into a more stable and permanent family relationship—without testimony of the proposed adoptive resources. This argument fails for multiple reasons.

¶15 First, Alice cites to no legal authority in support of her argument. *See **Wal-Mart Real Est. Bus. Tr. v. City of Merrill***, 2023 WI App 14, ¶32, 406 Wis. 2d 663, 987 N.W.2d 764 (stating that arguments unsupported by legal authority need not be considered). WISCONSIN STAT. § 48.426(3) does not require proposed adoptive parents to be in attendance or to testify at a dispositional hearing, nor does it require that the circuit court make any findings regarding their fitness and suitability. The statute does not even require that a proposed adoptive parent be identified at the time of the dispositional hearing. The applicable statutory factors simply ask the court to consider the child's likelihood of adoption and whether the child will enter into a more stable and permanent family relationship as a result of an adoption.

¶16 Second, Schmidt's testimony provided a sufficient basis for the circuit court to reach a decision on all of the statutory factors including those factors that Alice contested. Through Schmidt's testimony, the Department entered into evidence a report from LSS stating that the foster parents "have expressed an interest in applying to adopt" and that if they do not do so, there is a

"pool of approved adoptive families who could match with this child." Further, the report stated that the foster family had already begun taking steps toward adopting Paige, and that LSS had conducted a home study of the foster family and identified no safety concerns in the home. Schmidt testified that the foster parents have never wavered in their desire to adopt Paige. Schmidt's testimony—that Paige had been in foster care for over four years, that she would not be harmed if her relationship with Alice was severed, that she had a good relationship with her foster parents and was doing well, and that the foster family or another available resource would likely adopt Paige—was sufficient to support the court's finding that termination of Alice's parental rights would provide Paige with deserved permanency.

¶17 Alice argues that the circuit court should not have relied on Schmidt's testimony because it was based on inadmissible hearsay. Alice concedes that hearsay is admissible at a dispositional hearing, but she argues that the court could not rely upon Schmidt's hearsay testimony because it lacked the "demonstrable circumstantial guarantees of trustworthiness" required under WIS. STAT. § 48.299(4)(b).

¶18 We reject this argument as undeveloped. Alice fails to explain why the circuit court could not rely on Schmidt's testimony, and she cites to nothing in the record showing that Schmidt's testimony was inconsistent with any other evidence; rather, Schmidt's testimony was consistent with the LSS report. In reply, Alice argues that the LSS report was also hearsay, and had no guarantees of trustworthiness because it was a form document. However, whether a form or not, the report coupled with Schmidt's uncontroverted testimony consistently showed that Paige's foster parents were interested and willing to adopt Paige, and Alice provides no evidence to the contrary.

¶19    Moreover, Alice ignores Schmidt's testimony regarding her background and experience as the long-term case manager in Paige's CHIPS case. The circuit court clearly found Schmidt's testimony to be credible, as the court relied upon it in reaching its decision, and the court was the sole arbiter of Schmidt's credibility. *See* WIS. STAT. § 805.17(2). In short, we conclude Alice's objection in this regard is without merit.

¶20    Alice further argues that her due process rights were violated by the lack of testimony from Paige's adoptive resources because she did not have the "opportunity to cross-examine the proposed adoptive resource about that person's intentions, background, lifestyle, economic status or any other matter." This argument also fails. Based upon Schmidt's testimony, the Department made a prima facie case in support of its claim that the termination of Alice's parental rights was in Paige's best interest. As the Department correctly notes, Alice had ample opportunity to, and did, cross-examine Schmidt. She then had the opportunity to call the foster parents as witnesses, as well as the opportunity to call an expert witness to testify in opposition to the proposed disposition, but chose not to. Alice's claim that she was denied due process due to a lack of testimony from Paige's adoptive resources is without merit.

    *By the Court.*—Order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9